147 So. 432

### COOPER v. STATE ex rel. HAWKINS.

#### 6 Div. 280.

Supreme Court of Alabama.

Jan. 12, 1933.

Rehearing Denied March 9, 1933.

Cabaniss & Johnston and K. E. Cooper, all of Birmingham, for appellant.

Judge & Nesmith, of Birmingham, for appellee.

KNIGHT, Justice.

Quo warranto brought by the state of Alabama on relation of Sam W. Hawkins and Sam W. Hawkins against L. B. Cooper, seeking to oust the latter from the office of chairman of the board of registrars of Jefferson county.

This proceeding presents for determination by this court the constitutionality of the act, approved October 31, 1932, amendatory of section 370 of the Code of Alabama, which provides for registration of electors in the several counties of the state; the appointment of boards of registrars, prescribing their qualifications, and the designation of the chairman for each of said boards. By this section, a board of registrars, in each county, consisting of three members is provided for, and the appointment of the members of the boards is confided to the Governor, state auditor, and commissioner of agriculture and industries, acting as "a board of appointment." By the terms of section 370, it is provided: "One of said members shall be designated by the board of appointment as chairman of the board of registrars for each county."

The amendatory act in question, the constitutionality of which is assailed by the respondent Cooper, adds to, and at the end of, section 370 the following words:

"Provided, however, that in counties of over one hundred and fifty thousand population, according to the last or any subsequent federal census, that the Governor shall appoint the chairman of the Board of Registrars, who shall serve for a term of four years and shall be removable only by impeachment for the same causes and in the same manner as county officers are impeached."

"Upon the passage of this Act, the Governor shall designate and appoint one of the members of each of said boards in such counties as chairman of the Board of Registrars, who shall forthwith qualify and take office as chairman and who shall hold such office until the expiration of his term as herein defined."

The constitutionality of the act is assailed upon more than one ground, as hereinafter pointed out. It is insisted by appellant that the act is an unadvertised local law, attempted to be passed in violation of section 106 of the Constitution, "because (a) it designates rather than classifies and (b) it fails to show any reasonable relationship between population class and purpose of Act." And "2. The Act purports to oust from office a county official having a fixed term of office, before the expiration of his term of office, in violation of section 175 of the Constitution."

We will first address ourselves to a consideration of the question of whether the act presents a case of designation rather than of classification reasonably related to the purpose to be effected, and substantial difference in population which forms the basis thereof, made in good faith and not arbitrarily.

In considering the above question, we deem it not amiss to call attention to the fact that in 1927 (Laws 1927, p. 277) the Legislature saw proper to require the chairmen of the boards of registrars in counties having a population of more than 150,000, according to the last or any succeeding federal census, to perform all the duties, and to exercise all the power and authority, required of judges of probate by article 3, chapter 19 (§ 370 et seq.) of the Code of Alabama. This act of 1927 in terms and effect served to strip judges of probate of all duties, power, and authority over the registration of electors in such counties, and which were theretofore, in said article, required of them.

So far as we have been advised, the constitutionality of the act of 1927 has not been challenged upon the ground that it was a mere designation and not a reasonable classification. Certain it is that this respondent, as the chairman of the board of registrars for Jefferson county, since his appointment or designation as chairman of said board, has recognized said act as a valid and constitutional enactment, and has continued to exercise the power and authority conferred upon him by said act, as such chairman. Doubtless, the members of the Legislature were of the opinion that, in such large counties, the

duties required of judges of probate, with respect to the registration of electors, were too numerous, and onerous, to be given due and proper consideration in view of the many other duties enjoined upon them in such counties, and therefore it was deemed wise to require that the chairmen of the boards of registrars should perform those duties in counties with a population in excess of 150,000.

This court, at an early date after the adoption of our present Constitution, committed itself, in line with the holding in other jurisdictions where similar constitutional provisions with reference to the enactment of general and local laws prevail, to the following test by which the character of the act, whether general or local, should be determined: "The effect of all of our decisions, in short, has been that where there is a substantial difference in population, and the classification is made in good faith, reasonably related to the purpose to be effected and to the difference in population which forms the basis thereof, and not merely arbitrary, it is a general law, although at the time it may be applicable to only one political subdivision of the state; but that if the classification bears no reasonable relation to the difference in population, upon which it rests, in view of the purpose to be effected by such legislation, and clearly shows it was merely fixed arbitrarily, guised as a general law, and, in fact, is a local law, it is then in plain violation of the Constitution and cannot be upheld." Reynolds v. Collier, 204 Ala. 38, 85 So. 465, 467; Vaughan, Probate Judge, v. State ex rel. Dawson, 212 Ala. 258, 102 So. 222; State v. Gullatt, 210 Ala. 452, 98 So. 373; State v. Weakley, 153 Ala. 648, 45 So. 175; Mobile County v. Byrne, 218 Ala. 5, 117 So. 83; Kearley v. State ex rel. Hamilton, 223 Ala. 548, 137 So. 424; Wages v. State (Ala. App.) 141 So. 709, 710.

In view of the fact that much is said in brief of counsel for appellant with reference to the motives and good faith of the Legislature in the passage of the act in question, we feel that it is not amiss to say here again that this court cannot look beyond the act itself for motive or purpose. Nor, in a proceeding of this kind, can we put on trial the Legislature of Alabama, a co-ordinate branch of the government, in order to determine whether the author of the measure was actuated by ulterior purposes. State ex rel. Russum v. County Comm. of Jefferson County et al., 224 Ala. 229, 139 So. 243; State ex rel. Camp v. Herzberg, 224 Ala. 636, 141 So. 553; State ex rel. Ward v. Henry, 224 Ala. 224, 139 So. 278.

In applying the rules to determine whether an act is general or local, it is our duty not to construe a law as local when it is so worded as to be interpreted as a general one, in order to save its constitutionality, and this results from the rule that, before a statute is stricken as unconstitutional, the court must be convinced beyond all reasonable doubt of its unconstitutionality. State v. Gullatt, supra; Reynolds v. Collier, supra; State v. Merrill, 218 Ala. 149, 117 So. 473; Ward v. State ex rel. Lea, 224 Ala. 242, 139 So. 416.

The only changes in section 370 of the Code wrought by the act in question are: (1) The governor is given the power to appoint the chairmen of the boards of registrars in counties of over 150,000 population; (2) such chairmen when appointed shall have a fixed term of four years; (3) they shall be removable only by impeachment for the same causes and in the same manner as county officers are impeached; and (4) upon the passage of the act, the governor is required to designate and appoint one of the members of each of said boards. in each of said counties, as chairman of the board of registrars, who shall forthwith qualify and take office as chairman, and who shall hold such office until the expiration of his term as defined in the act.

No notice of the intention to apply to the Legislature for the passage of the act was published, and, of course, if it is a local law it is void for the failure to comply with the mandatory provisions of section 106 of the Constitution.

As heretofore pointed out, the Legislature of 1927 transferred all the duties required by article 3, chapter 19 of the Code, of judges of probate to the chairmen of the boards of registrars, in all counties of the state having a population of more than 150,000; but in all counties having a population less than 150,000, the duties, powers, and authority conferred upon judges of probate by article 3, chapter 19 of the Code, still remain with such judges.

We can see many reasons why in counties having a population of more than 150,000 the duties ordinarily required of judges of probate, with respect to the registration laws of the state, should be transferred to some other officer who is not charged with other duties, and who can give his full attention to the performance of those duties. No doubt the magnitude, importance, and volume of this work appealed to the Legislature as furnishing reasonable grounds for the transfer of those duties to the chairmen of the boards, and thereby to furnish a reasonable basis for the classification.

Do not the added duties, powers, and authority suggest to a reasonable mind that the official clothed therewith should be a man of ability and experience, and does not this fact also suggest that he should have some fixed term of office, not removable at the mere will, whim, or caprice of the appointing power? This official must perform many duties and possess much power and authority not required of, or conferred upon, chairmen of such boards in counties of population less

292

than 150,000. In such circumstances, do not these facts afford a reasonable basis for the classification adopted in the act, and that such classification was made in good faith and reasonably related to the purpose to be effected? We think so. If we are correct in this conclusion, can we say that the Legislature went beyond permissible bounds in providing that the Governor, the chief executive of the state, clothed by law with the authority to make appointments in filling vacancies that occur in the highest and most important offices of the state, should alone make the appointment of chairmen of the boards of registrars in counties having population of more than 150,000, without having to share that duty and responsibility with two other lesser officials of the state? We think the office of chairman of the board of registrars in such counties was and is of such character, considering the magnitude and importance of the duties, as to justify the Legislature in conferring upon the Governor the sole power of appointment.

It is also earnestly insisted ·that the provisions of the amendatory act, authorizing and directing the Governor, upon the passage of the same, to designate and appoint one of the members of each of said boards as chairman, makes the law local, in that, it unerringly and directly pointed to Jefferson county, and to no other political subdivision of the state, and that it "operated to remove only one officer in the State—the chairman of Jefferson County registrars." We do not think there is merit in this contention. The act is so worded that, whenever any county reaches a population of more than 150,000, it will automatically fall within the influence of, and become subject to, the provisions of the same.

■ It is no valid objection to the act that, at the time of its passage, it can have immediate effect in one county only, and its application to the other counties of the state is postponed until by further growth they come within its influence. Henry, County Treas. v. State ex rel. Hartsfield, 218 Ala. 71, 117 So. 626; State ex rel. Russum v. Jefferson County Comm., 224 Ala. 229, 139 So. 243; State ex rel. v. Pitts, Probate Judge, 160 Ala. 133, 49 So. 441, 686, 135 Am. St. Rep. 79; State ex rel. Woodward v. Skeggs, 154 Ala. 249, 46 So. 268; State ex rel. Brown v. Porter, 145 Ala. 541, 40 So. 144; State ex rel. Covington v. Thompson, 142 Ala. 98, 38 So. 679; Smith v. Stiles, Probate Judge, 195 Ala. 107, 70 So. 905; State ex rel. Brooks v. Gullatt, 210 Ala. 452, 98 So. 373.

■ The act in question has prospective operation, as well as immediate effect, in Jefferson county. We do not think it is subject to the criticism that its sole effect was to remove the appellant from office.

■ It is also insisted that the registrars in office at the time of the passage and approval of the act were county officers, with fixed terms, and were therefore subject to removal only by impeachment as provided in section 175 of the Constitution, and for causes enumerated in section 173 of the same instrument.

Did the appellant, as registrar, have a fixed term of office? If so, it was by virtue of section 371 of the Code. This section reads: "Terms of office.—The registrars so appointed under this article may be removed at the will of the appointing board, or a majority of the members thereof, at any time, with or without cause, and without giving their reasons therefor; and if not so removed, the registrars may hold office for four years from the time of their appointment and until their successors are appointed."

The peculiar wording of this section cannot fail to impress the judicial mind that it was the manifest purpose of the Legislature not to fix at all events a four-year term for the registrars. Doubtless the members of the Legislature had good reason not to give these officers a fixed term. The legislative body seemed more concerned about giving the appointing board the right, with or without cause, and without assigning reasons therefor, to remove the appointees, than it was to secure to them a fixed term. As we see it, the registrars were appointed to serve at the will of the appointing board, with a limitation of four years, beyond which they could not serve under the then appointment. Had it been the legislative purpose to fix the term of office of the registrars at four years, no doubt they would have said so in such words as would have shown that purpose. We have been unable to find any case directly in point, nor have industrious counsel cited us to any such case. We conclude that the registrars were without fixed terms. Even if this were not true, the chairmen of the boards of registrars designated as such by the appointive board under the provisions of section 370 of the Code, certainly have no fixed terms as such chairmen. The power that designated them, can remove them; there being nothing in the Constitution or statute prohibiting the same. Touart v. State, 173 Ala. 453, 56 So. 211.

Appellant's counsel have pressed upon our attention the case of Petree v. McMurray, 210 Ala. 639, 98 So. 782, as being directly in point, and as sustaining appellant's contention. We do not so consider the Petree Case. In that case, the county superintendent was appointed under section 1 of Article 6 (p. 588 [Acts 1919]) of the act entitled "An Act to provide a complete educational system for the State of Alabama," for a term of two years. the shortest term, provided by said act. Section 2 of the act provided that the board of education might remove the county superintendent for designated causes. This court in that case held that the county superintend-

ent, being a county officer, with a fixed term, was expressly protected by section 175 of the Constitution from removal, except by impeachment. In the instant case, the appellant has no fixed term, either as a member of the board of registrars, or as the designated chairman of the board, and hence the Petree Case is not an authority in point as appellant seems to think.

The appellant also insists that the word "may," as it appears in the phrase "may hold office," should be given the forced construction of must. He contends, quoting from 59 Corpus Juris 1082, that this "mandatory construction will usually be given to the word 'may,' where public interests are concerned and the public or third persons have a claim de jure that the powers conferred should be exercised, or whenever something is directed to be done for the sake of justice or the public good." No doubt, in the instances stated in the quotation, the permissive word "may" may be translated into the mandatory word must. Our own court, in the case of Conecuh County v. Carter. 220 Ala. 668, 126 So. 132, as pointed out by appellant, has said that, in certain cases, "where the authority is conferred to do something for public good or the advancement of justice, compulsory force will be given the statute, notwithstanding the use of permissive words." However, the present case is not one calling for the application of this axiom of statutory construction.

We are of the opinion, and so conclude, that the act of the Legislature, approved October 31, 1932, under which appellee was appointed chairman of the board of registrars of Jefferson county, does not violate the provision of the Constitution as presented in this case, and that the court below properly overruled appellant's demurrer to the complaint, and the judgment of ouster of appellant is here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

On Rehearing.

KNIGHT, Justice.

In the application for rehearing, the court is asked to reconsider the case, and to hold the act in question unconstitutional and void, on "a ground and for a reason that was not presented or argued on the original submission of this cause."

It is now, for the first time, insisted that the act in question violates section 45 of the Constitution. Counsel for appellant, with commendable candor, admits that this is a belated insistence, but urges upon our attention, to justify a consideration now of his insistence, the case of State ex rel. Knox v. Dillard, 196 Ala. 539, 548, 72 So. 56. However,

in that case, the question of the unconstitutionality of the act was raised in a general way, and the court held a general allegation of the unconstitutionality of the act was efficient to invoke a ruling thereon. This question was not *raised* by any ground of demurrer, general or special, and will not therefore be considered.

Application for rehearing overruled.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.